[No. 9563. Department One. June 17, 1911.]

A. P. HOCKERSMITH et al., Respondents, v. R. J. FERGUSON, Appellant.[1]

EVIDENCE — PAROL TO VARY WRITING — COLLATERAL AGREEMENT. Where a written lease appears to have been carefully prepared after consideration of many questions in regard to the property, the lessor agreeing to do nothing except deliver possession and the lessee agreeing to accept the premises as they then were and make all necessary repairs to the interior, evidence is inadmissible of an alleged oral contemporaneous agreement whereby the lessor was to make certain alterations in case of change of street grade; since it is not a collateral agreement, but was a necessary part of the letting which should have been included in the lease.

[1]Reported in 116 Pac. 11.

Appeal from a judgment of the superior court for King county, Tallman, J., entered March 23, 1910, upon the verdict of a jury rendered in favor of the plaintiffs, in an action on contract. Reversed.

*G. E. Steiner* and *Walter B. Beals,* for appellant.

*Brady & Rummens* and *Thomas B. McMartin,* for respondents.

MOUNT, J.—Plaintiffs brought this action to recover damages to their business and stock of goods, by reason of the alleged failure of the defendant to comply with an agreement to make certain store rooms conform to the street upon which such store rooms fronted. Defendant denied the agreement. The case was tried to the court and a jury. A verdict was returned in favor of the plaintiff. The defendant appeals from the judgment entered upon the verdict.

It appears that, in the year 1905, the defendant leased lot 2, block 10, Boren & Denny's addition to Seattle, from the Cyrus F. Clapp estate, for the period of five years. Defendant thereupon erected a one-story brick building upon this lot. This building consisted of several store rooms facing upon Madison street in said city. When the building was about completed, plaintiffs entered into negotiations with the defendant to lease two of these store rooms, numbered 215 and 217 Madison street. The rental and terms of the lease were agreed upon in November, 1905, and upon the 1st of December, 1905, the plaintiffs took possession of the rooms. On the 9th day of December a written lease was entered into, as follows:

"This indenture of lease made this 9th day of December, 1905, by and between R. J. Ferguson of the city of Seattle, county of King, state of Washington, party of the first part (hereinafter called the lessor) and A. P. Hockersmith, of said city, county and state, party of the second part, (hereinafter called the lessee),

"Witnesseth: That the said lessor does by these presents

lease and demise unto the lessee that certain store room, designated and known as Nos. 215 and 217 Madison street, situated upon lots 2, in Boren & Denny's addition to the city of Seattle, for a period of two years from the first day of January, 1906, to the 31st day of December, 1907, for the rent or sum of thirty-six hundred dollars ($3,600) payable in gold coin of the United States of America in twenty-four (24) equal monthly installments amounting to one hundred and fifty dollars ($150) payable in advance on the first day of each and every month during the term of this lease. That said lessee hereby accepts said premises for the term of two years and agrees to pay therefor the sum of thirty-six hundred dollars ($3,600) said sum to be paid at the office of John Davis & Co., No. 709 Second avenue, Seattle, Washington, in the manner and at the times hereinafter specified. That said lessee agrees to pay any and all charges for heat, light and water rates, which shall become due or shall be taxed or assessed against said premises during the term of this lease, and further agrees to make all necessary repairs of whatsoever nature to the interior of said premises, and to deliver up said premises at the expiration of this lease in as good condition as they are now in, excepting the necessary wear and tear thereof and damages by the elements or fire. That said lessee, his heirs, executors, administrators or assigns shall hold harmless said lessor from all damages or accidents of every kind or nature whatsoever that may occur on said premises. That said lessee shall not use said premises for saloon or restaurant purposes, nor let or sub-let the whole or any part thereof, nor make or permit to be made any changes or alterations whatsoever without the written consent of the said lessor, or John Davis & Co., his agents, nor assign this lease or any part thereof without said written consent. That said lessee shall not use said premises for immoral or illegal purposes, nor under any circumstances permit gambling or the sale of intoxicating liquors upon said premises. It is hereby agreed that if any rent shall be due and unpaid, or if default shall be made in any of the covenants or agreements herein contained, it shall be lawful for the said lessor or John Davis & Co., his agents, to re-enter said premises and remove all persons therefrom. That the said lessor, or his agents, shall have the right to enter said premises at all reasonable times, and shall have the

further right to place 'For Rent' signs on said premises
thirty (30) days prior to the expiration of this lease.

"In witness whereof the parties hereunto have set their
hands and seals the day and year first above written."

The lease was signed, sealed, and acknowledged. After
the plaintiffs had occupied the building about three months,
the defendant sold and conveyed all of his interest in the
property to the Cyrus F. Clapp estate, the owner of the fee,
and thereafter, on April 2, 1906, the Cyrus F. Clapp estate
sold and conveyed the property to Sullivan & Considine.
The plaintiffs thereafter, on April 9, with notice of the sale,
recorded the lease in the county auditor's office. Thereafter,
in October or November of the same year, the city of Seattle,
by its contractors, entered upon the street in front of the
property, tore up its sidewalks, and cut away the street
some eighteen feet, leaving for several months no means of
ingress to or egress from the premises. The plaintiffs
brought this action against the defendant for damages
caused thereby, and alleged, in paragraph 6 of the complaint,
the following:

"That at the time of the lease as aforesaid the said
premises were desirable particularly for the purpose of plain-
tiffs' said business as well as valuable for other commercial
purposes, the same being located at 215 and 216 Madison
street in the city of Seattle, then and there a popular and
valuable location in the business district of said city; then
graded and improved and easily accessible to the general
public; that at the said time as aforesaid there was then in
contemplation a great public improvement of the city known
generally and publicly as the 2d Avenue regrade, and which,
if the same took place during the life of the said lease, pro-
posed it would, by reason of the interruption and disturbance
in the enjoyment of the said premises render the said lease-
hold of little value as was then and there mutually agreed.
That at the time of making the said lease, the plaintiffs and
said defendants, by reason of the uncertain condition with
respect to the contemplated change of grade in said Madison
street, made no provision except as aforesaid in said inden-
ture of lease regarding the remodeling and rebuilding of the

said premises and store rooms situated therein. The said defendant landlord and these plaintiffs then and there further agreeing, by an oral, collateral contemporaneous agreement that if the said public improvement did take place during the life of the said lease, with its then agreed attendant damage, and the beneficial enjoyment of the possession be interrupted, that the said defendant R. J. Ferguson would remodel, reconstruct and repair said building as leased, by lowering the floors of the store rooms so leased, to wit eighteen feet, so as to put the same to the level of said Madison street, these plaintiffs agreeing to remove to said store rooms when said floors should have been so lowered. That by so lowering said floor, as aforesaid, the said R. J. Ferguson would be permitted thereby to create a new and additional rentable room in said building above the store rooms then to be occupied by these plaintiffs; and the said lessor then and there further agreed as a further and a part consideration, and as an inducement to enter into said lease hereinbefore described between the plaintiffs and the said defendant R. J. Ferguson, to build and construct a new entrance to the said store rooms, with an attractive glass front and with tiled flooring at the entrance, and to put in new and additional side and end windows, thereby creating said building, whence said floor had been so lowered, into an attractive and desirable store room for the use of these plaintiffs. And as a further part of said agreement, agreed to cause to be constructed a sidewalk in front of said building and premises, and otherwise to so improve the same that they would present an attractive and inviting appearance."

The complaint did not set out a copy of the lease. The defendant, when he appeared in the action, moved the court to strike this paragraph from the complaint. When this motion was denied, defendant demurred, and when the demurrer was overruled, filed an answer setting up the lease, and denied all the facts as alleged in regard to a collateral, contemporaneous, oral agreement. When the case was on trial, the defendant objected to the testimony offered in support of the allegations of the complaint as quoted above. These objections were overruled, and the plaintiffs were permitted to testify to the facts substantially as alleged in the

complaint.   At the close of plaintiffs' evidence, defendant
moved to strike it and for a dismissal.

The defendant contended below, and now urges here, that
the facts alleged and testified to contradicted and varied the
terms of the written lease and were therefore incompetent.
The plaintiffs maintain that the evidence was admissible,
because it tended to prove an oral, collateral, contemporan-
eous agreement.   The rule is elementary that a written con-
tract may not be varied or contradicted by parol.   The rule
is also well settled that parol evidence of collateral, oral
agreements may be received where the parties have not, by
their written contract, appeared to intend to reduce their
entire negotiations to written form.   *Puget Sound Iron &*
*Steel Works v. Clemmons*, 32 Wash. 36, 72 Pac. 465; 1
Elliott, Evidence, § 578.   So that the main and controlling
question here is, Was the alleged oral agreement a collateral
one, or was it a part of the contract of lease.   In Elliott on
Evidence, § 578, it is said:

"Parol evidence of a distinct, valid, parol agreement be-
tween the parties, although prior to or contemporaneous with
the written contract, is not excluded by the rule in question
where it does not in any way vary or contradict the writing,
and there are some cases in which this is true, although the
parol agreement may be collateral to the written contract
and relate in some way to the same subject-matter, at least
where the writing is silent upon the subject and the parol
agreement does not appear to be so closely connected with the
matter of the written contract that it should be deemed to
have entered into the negotiations or formed a part of the
transactions or matter of which the writing was intended to
be a complete and final statement.   But a complete, valid,
written contract merges all prior and contemporaneous ne-
gotiations and agreements within its purview, and if the parol
agreement is not really collateral, but is an element of the
written contract, or tends to vary or contradict the same,
either in its express provisions or its legal import, it is in-
admissible.   The question usually is as to whether the parol
evidence sought to be introduced contradicts or alters the
written contract, or leaves it to stand unchanged and simply

tends to establish an additional collateral agreement. It is often difficult to determine this question, and there is much conflict among the authorities."

In the next section, 579, the same author says:

"There is also a class of cases in which it is held that oral evidence of a collateral contemporaneous agreement which assumes the contract as indicated by the writing and undertakes to deal with some contingency or new relation of the parties in the future that may arise under the written agreement, is admissible. It has also been held that parol evidence is admissible . . . to show an agreement to destroy game, rebuild or repair as collateral to a lease, and to show an agreement by a vendor or lessor not to engage in a rival or competing business. But many of these decisions are of questionable soundness, and, as shown in the next section, the weight of authority is against some of them."

And in the next section, 580, it is said:

"So, contrary to decisions referred to in the preceding section, it has been held that a prior or contemporaneous parol agreement by a vendor or lessor not to carry on a competing business is inadmissible where the written contract appears to be complete. And so the better rule is that an oral warranty of the condition of the premises or agreement on the part of the lessor to make repairs or improvements cannot be shown in such a case."

This appears to be the correct rule, and the one substantially followed by us in *Gordon v. Parke & Lacy Mach. Co.*, 10 Wash. 18, 38 Pac. 755; *Morris v. Healy Lumber Co.*, 46 Wash. 686, 91 Pac. 186, and *Tobin v. McArthur*, 56 Wash. 523, 106 Pac. 180. It is, therefore, not necessary for us to review the numerous cases which follow or deny the rule.

It is conceded in this case that, after negotiations which led up to it, the lease in question was made. It bears upon its face evidence of careful preparation, and shows that the parties to it had considered the many questions in regard to the property; and upon the evidence introduced, it is not questioned that the parties discussed and considered the change

in the street grades and its effect upon the property. The written lease provides: "That said lessee hereby accepts said premises for the term of two years;" "that said lessee agrees to pay any and all charges for heat," "and agrees to make all necessary repairs of whatsoever nature to the interior of said premises;" "that the said lessee shall not use said premises for saloon or restaurant purposes nor let or sub-let the whole or any part thereof nor make or permit to be made any changes or alterations whatsoever without the written consent of the lessor." This appears to be a plain lease, where the lessor agreed to do nothing except to deliver possession of the premises to the lessee, who agreed to accept the premises as they then were, for a period of two years, and agreed to make all necessary repairs to the interior, and to make no changes or alterations to the building without the written consent of the lessor or his agents. Where there is no express agreement for the lessor to repair or alter the building, no such obligation will be implied. The duty devolves upon the lessee. 24 Cyc. 1081 *et seq.*; 18 Am. & Eng. Ency. Law (2d ed.), p. 226; *Ward v. Hinkleman*, 37 Wash. 375, 79 Pac. 956.

If there was an agreement by the lessor prior to this writing, to change or repair the building during the term of the lease, that agreement was as much a part of the contract of lease as any other, and should have been incorporated in it. It was clearly not a collateral agreement under the rule first above stated. If the agreement was made as alleged and attempted to be proved, it was a part of the contract of lease, and it is strange that so important a matter should have been left out of the written agreement. As was said by Lord Ellenborough, in *Powell v. Edmunds*, 12 East 6, at page 10:

"If the parol evidence were admissible in this case, I know of no instance where a party may not by parol testimony superadd any terms to a written agreement; which would be

setting aside all written contracts and rendering them of no effect."

The trial court therefore erred in not sustaining the defendant's objection to the evidence, and in refusing to dismiss the case upon the defendant's motion.

The judgment is therefore reversed, and the cause ordered dismissed.

DUNBAR, C. J., PARKER, GOSE, and FULLERTON, JJ., concur.