[No. 1715, July 16, 1915.]

LOCKE v. MURDOCH.

SYLLABUS BY THE COURT.

1. Parol testimony cannot be received to contradict, vary, add to, or subtract from the terms of a valid written contract.

P. 526

2. A valid written contract merges all prior and contemporaneous oral negotiations concerning the subject-matter embraced within the terms of the writing.

P. 528

3. Parol evidence of a distinct, valid parol agreement. although prior to or contemporaneous with a written contract, is admissible unless it contradicts or varies the terms of the writing.

P. 528

Locke v. Murdoch, 20 N. M. 522.

4. Where the terms of a written contract are silent as to the subject-matter of a parol contemporaneous agreement and the latter does not contradict the terms of the former and was the inducing cause for the execution of the written contract, proof of the contents of the parol contemporaneous agreement is admissible.

P. 526

5. Courts of equity entertain jurisdiction of injunction cases, where one party to a contract seeks to restrain the other from carrying on a business or profession for a stated length of time which the party agreed not to carry on, on the ground that the parties cannot be placed in statu quo and that damages at law afford no adequate compensation to the injured party.                                    P. 536

6. The findings of a trial court will not be disturbed where there is substantial evidence to support them.

P. 538

7. A delay of ten months in asserting rights in a court of equity, under the circumstances of this case, does not constitute laches of such a nature as to deprive the party of equitable relief, especially where the trial court entertained jurisdiction of the cause in the first instance.

P. 538

8. Admission of letters, their contents, and of conversations, written and had prior to the making of a written contract, introduced and received for the purpose of supporting the truth of a contemporaneous oral agreement, and not contradicting the terms of the written contract, are properly admitted.

P. 541

9. A parol agreement to refrain from practicing dentistry, made at the same time a written contract for the sale of the dentistry business was made, is supported by a sufficient consideration.

P. 535

10. A contract prohibiting a person from practicing dentistry in the town of S. for five years will not permit the opening of an office in S. for the treatment of patients outside of S.

P. 534

Appeal from District Court, Colfax County; Leib, Judge.

Action by H. S. Murdoch against Seaon Locke. From a judgment for plaintiff, defendant appeals. Modified.

FRANCIS C. WILSON of Santa Fe, for appellant.

H. L. BICKLEY of Raton, for appellee.

### STATEMENT OF FACTS.

This is an action brought in the district court for Colfax county by appellee against appellant. The complaint alleged, substantially, that the parties hereto entered into a written contract on September 23, 1910, whereby appellant agreed to sell, and appellee to purchase, appellant's dental practice and certain office furniture in the town of Springer, in consideration of $300, payable in certain monthly installments; that at the same time appellant orally agreed that as a further consideration the appellant would execute a written contract not to open a dental office in the town of Springer for the purpose of practicing dentistry for a period of five years therefrom, when appellee had paid one-half of the purchase price for the sale of the said dental practice and office furniture; that, in pursuance thereof, appellee paid said one-half of the purchase price, and appellant thereupon executed in writing, the agreement not to open an office in Springer for five years for the purpose of practicing dentistry therein; that appellee performed all the conditions of the last-mentioned contract on his part to be performed, but that appellant, in violation of said agreement, on April 23, 1912, opened a dental office for the purpose of practicing dentistry in Springer, and has continually since held him-

self out to the public as ready and willing to practice dentistry in Springer, and is now actually engaged in such practice at said place and threatens to continue therein, to the damage of appellee; that appellee has suffered irreparable injury which cannot be measured by a money judgment; that a multiplicity of suits will be necessary to protect the rights of appellee unless the court interferes by injunction; and that appellee has been damaged on account of said acts in the sum of $1,000. Appellant interposed a demurrer to the complaint. The grounds were that the alleged contract of March 23, 1911, was nudum pactum, unilateral, void, and without any consideration. The demurrer also alleged that the cause of action set out in the complaint was ambiguous and uncertain, in that three distinct contracts are therein referred to, and that appellee was not entitled to the relief demanded, or any other relief in equity. The demurrer was overruled. Thereupon appellant answered, denying the alleged oral agreement, admitting the execution of the contract of March 23, 1911, but setting up that the same was without consideration, and alleging by way of new matter that appellant performed all the conditions of his part agreed to be performed, but that appellee, after the making of the alleged contract of March 23, 1911, agreed, in consideration of the promise of appellant to cease making professional visits to the town of Wagon Mound, that the appellant might practice dentistry in Springer in so far as the same concerned persons desiring treatment from appellant. The case came on for trial before the court without a jury, and judgment making the temporary injunction permanent and awarding damages in the sum of $250 for appellee was rendered by the court. This is an appeal from that judgment.

The record discloses that appellee proved the case made by the pleadings. Appellee was a resident of Fredericktown, Mo., and came to Springer for the purpose of negotiating with appellant for the purchase of the latter's dental practice. An advertisement inserted by appellant in a dental magazine brought appellee and appellant to-

gether.    Correspondence was had between the parties
which contained representations by appellant that he had
labored for 12 years over the dental chair and that he de-
sired to leave Springer, after selling his practice and of-
fice furniture, but retain certain instruments used in his
profession, but not for the purpose of practicing dentistry
in Springer. Ultimately, a written contract was drawn by
appellant and presented to appellee. But it contained no
stipulation as to appellant ceasing the practice in Sprin-
ger, and this fact was called to the attention of appellant
by appellee.    Thereupon appellant and appellee agreed
that the appellant would execute in writing a stipulation
to the effect that he would not practice dentistry in Sprin-
ger for 5 years, or words to that practical effect, when ap-
pellant had been secured in the sale of his business and
furniture by the payment of one-half of the purchase
price.  The contract of sale and purchase was then exe-
cuted by the parties, the appellee relying upon the oral
promise of appellant to execute the second contract.    The
first contract would not have been executed by appellee ex-
cept for the said promise.  Subsequently, half of the con-
tract price was paid by appellee and the written agree-
ment agreed to be executed by appellant was executed.
But this agreement contained no recitation of a consider-
ation. About April 27, 1912, appellant opened an office
in Springer for the purpose of practicing dentistry there-
in and has since that time practiced dentistry in Springer.
Circular letters and advertisements were introduced show-
ing the fact that appellant was practicing dentistry in
Springer in an office maintained by him and that he was
holding himself out to the public generally as a dentist of
Springer. There are other facts of some importance, but
we deem it unnecessary to make a further statement of
them.

OPINION. OF THE COURT.

PARKER, J. (after stating the facts as above.)——
[1-4].  We discuss the questions presented by appellant;
according to their relative importance.  The first and con-
trolling question presented concerns the admission of cer-

tain evidence which appellant claims violates the rule that oral testimony cannot be admitted for the purpose of altering or changing the terms of a written instrument. The appellant contends, as we understand his brief, that the alleged promise of appellant to execute a written contract not to engage in the practice of dentistry in Springer for five years therefrom, made at the time of the execution of the contract of September 23, 1910, resting in parol in the first instance, cannot be proved, because such proof would tend to alter the terms of the contract of September 23, 1910. The appellee contends that the promise was collateral and independent of the written contract and constituted the inducement for the execution of the written contract, and, being such, is not violative of the rule contended for by appellant.

The contract of September 23, 1910, contains stipulations concerning the sale of appellant's practice and office furniture in Springer, but is silent as to the stipulation contained in the oral agreement.

The courts seem to agree that the question at bar presents a recurring difficulty, not because of the rule itself, but because of the application of the exceptions which appellee invokes.

The existence of the general rule cannot be controverted. Reynolds, Trial Evidence, § 74; 2 Page on Contracts, § 1189; 2 Elliott on Contracts, § 1671; Jones on Evidence (2d Ed.) § 434; and 4 Wigmore on Evidence, § 2425 et seq.

The exception to the rule which is invoked by appellee is equally well settled.

> "The general rule under discussion is not violated by allowing parol evidence to be given of the contents of a distinct, valid, contemporaneous agreement between the parties which was not reduced to writing, when the same is not in conflict with the provisions of the written agreement. The exception is thus stated somewhat more guardedly by Mr. Stephen: 'The parties may prove the existence of any separate oral

agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if, from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final settlement of the whole transaction between them." Jones on Evidence (2d Ed.) § 439.

"The rule that a written contract merges all prior and contemporaneous oral negotiations applies only to such oral negotiations as concern the subject-matter embraced within the written contract." 2 Page on Contracts, § 1219.

"Parol evidence of a distinct, valid, parol agreement between the parties, although prior to or contemporaneous with a written contract, is not excluded by the rule in question where it does not in any way vary or contradict the writing, and there are cases in which this is true, although the parol agreement may be collateral to the written contract and relate in some way to the same subject-matter, at least where the writing is silent on the subject and the parol agreement does not seem to be so closely connected with the matter of the written contract that it should be deemed to have entered into the negotiations or formed a part of the transaction or matter of which the writing was intended to be a complete and final settlement. But a complete, valid, written contract merges all prior and contemporaneous negotiations and agreements within its purview, and if the oral agreement is not really collateral, but is an element of the written contract, or tends to vary or contradict the same, either in its express provisions or legal import, it is inadmissible. The question usually is as to whether the parol evidence sought to be introduced contradicts or alters the written contract, or leaves it to stand unchanged and simply tends to establish an additional collateral

agreement. It is often difficult to determine this question, and there is much conflict among the authorities." 2 Elliott on Contracts, § 1633.

"The most usual controversy arises in cases of partial integration, i. e., where a certain part of a transaction has been embodied in a single writing, but nother part has been left in some other form. Here obviously the rule against disputing the terms of the document will be applicable to so much of the transaction as is so embodied, but not to the remainder." 4 Wigmore on Evidence. § 2429.

An examination of numerous cases involving the rule and its exceptions is of no special benefit, but simply illustrates how the courts have applied the rule and its exceptions under the particular facts of each case. Whether the exception invoked by appellee is applicable depends entirely on whether the evidence clearly establishes that in fact the parol agreement is collateral to and independent of the written contract and does not vary the terms thereof. If it is, the court will apply the exception; if not, the general rule controls and the complaint must then be dismissed.

An examination of the following cases will be found interesting, as illustrating the difference in the application by the various courts of the rule and the exception involved in this case: Allen v. Herrick Hdw. Co., 55 Tex. Civ. App. 249, 118 S. W. 1157, 1159; Love v. Hamel, 59 App. Div. 360, 69 N. Y. Supp. 251, 252; Gordon v. Parke & Lacy Mac. Co., 10 Wash. 18, 38 Pac. 755, 756; Costello v. Eddy, 128 N. Y. 650, 29 N. E. 146; Hockersmith v. Ferguson, 63 Wash. 581, 116 Pac. 11; Schoen v. Sunderland, 39 Kan. 758, 18 Pac. 913; Chamberlain v. Lesley, 39 Fla. 452, 22 South. 736, 738; Indelli v. Lesster, 130 App. Div. 548, 115 N. Y. Supp. 46, 48; Holmboe v. Morgan, 69 Or. 395, 138 Pac. 1084, 1085; Marianna Hotel v. Livermore Foundry & Machine Co., 107 Ark. 245, 154 S. W. 952, 955; New York Life Ins. Co. v. Thomas, 47 Tex. Civ. App. 149, 104 S. W. 1074, 1075;

Neb. Land & Feeding Co. v. Trauerman, 70 Neb. 795, 98 N. W. 37, 39; Wessell v. Havens, 91 Neb. 426, 136 N. W. 70, Ann. Cas. 1913C, 1377; Kelly v. Ellis, 39 Mont. 597, 104 Pac. 873; Canfield Lumber Co. v. Kint Lumber Co., 143 Iowa, 207, 127 N. W. 70, 72; Due Rue v. McIntosh, 26 S. D. 42, 127 N. W. 532; Ashby v. McNary (Iowa) 134 N. W. 554; Milich v. Armour Packing Co., 60 Kan. 229, 56 Pac. 1, 3, 4; Hubbard v. Marshall, 50 Wis. 322, 6 N. W. 497, 498; Welz v. Rhodius, 87 Ind. 1, 6, 44 Am. Rep. 747; Durham v. Lathrop, 95 Ill. App. 429; Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825; Fusting's Ex'rs v. Sullivan, 41 Md. 162, 170; Pierce v. Woodward, 6 Pick. (Mass.) 206, 207, 208; Brintnall v. Briggs, 87 Iowa, 538, 54 N. W. 531; Cleaver v. Lenhart, 182 Pa. 285, 292, 37 Atl. 811; Slaughter v. Smither, 97 Va. 202, 33 S. E. 544, 545, 546; Zanturjian v. Boornazian, 25 R. I. 151, 55 Atl. 199; Carruthers & Murry v. McMurry, 75 Iowa, 173, 177, 39 N. W. 255; Hall's Appeal, 60 Pa. 458, 100 Am. Dec. 584.

In Allen v. Herrick Hdw. Co., supra, the court said:

"It is the rule that, when parties reduce their contracts to writing, such writing is to be taken as embodying all the previous negotiations and understanding about its terms, and they cannot be varied by parol; but the rule does not apply where it can be made to appear that the instrument was not intended to be a complete and final settlement of the whole transaction. * * * 'A verbal promise by one of the parties at the making of a written contract, if it was used to obtain the execution of the writing, may be given in evidence.' "

In Schoen v. Sunderland, supra, the court speaking with reference to parol evidence of a stipulation not contained within the contract said:

"It was outside of the contract and memorandum; contemporaneous with it, to be sure, but in no way conflicting with, altering, or changing it."

Locke v. Murdoch, 20 N. M. 522.

In New York Life Ins. Co. v. Thomas, supra, the court said:

> "It is a settled rule of law that one contract may be the consideration of another, the inducement to the execution thereof, and, where an independent parol agreement has been made as an inducement to the making of a written contract, the former may be proved and enforced, though not referred to in the latter."

In Wessell v. Havens, supra, the principal thing which controlled the decision of the court that the parol agreement could not be enforced was the fact that the written contract was made with much care and detail, and the parol agreement was not attempted to be enforced by plaintiff until a year and a half after the execution thereof and after the plaintiff had sold the business.

The test of the question applied by the court in Kelly v. Ellis, supra, is thus stated by the court:

> "The only remaining inquiry, then, is: Was the promise to employ plaintiff as local manager one of the essential terms of the oral contract itself, or was it only a collateral agreement made by the defendants as an inducement to the plaintiff to dispose of his property?"

In Canfield Lumber Co. v. Kint Lumber Co., supra, the court remarked:

> "The main contention is over the right of defendants to prove the parol agreement relied upon by them to the effect that the plaintiff was to take and pay for lumber ordered. We are constrained to hold that this testimony does not vary the contract or change any of the terms of the original agreement, and that it was admissible. A contract may be partly in writing and partly in parol, and unless there be a conflict between them, or they cover the same subject-matter, parol evidence is admissible to show the entire agreement."

In Due Rue b. McIntosh, supra, the court said:

"And one of the exceptions seems to be that agreements or representations made prior to the written contract under which the party was induced to sign the contract may be shown; in other words, where the parol contemporaneous agreement was the inducing and moving cause of the written contract, or where the parol agreement forms part of the consideration for a written contract, and where he executed the written contract upon the faith of the parol contract or representations, such evidence is admissible."

In Welz v. Rhodius, supra, the court said:

"The contract made, the promise given by either party, as expressed in the writing, cannot be modified; but further or additional consideration may be shown, even though it consist of a promise of one party to the other, if it be to do something outside of and so far distinct from the written promise or contract as that the latter is not varied or modified."

In Durham v. Lathrop, supra, the court said:

"We do not regard this oral transaction as merged in the writings. No one of the writings, or all of them, purport to be a complete contract, embodying all the terms of the agreement. The oral agreement not to interfere with the business to which his former partner was to succeed, and for which he (Lathrop) was to be paid, is in no way inconsistent with any of the terms of any of the writings, nor does it vary them."

In Fusting's Ex'rs v. Sullivan, supra, the court said:

"Although the good will of the store and the agreement not to set up another were, according to the statement of Shipley, material elements of the consideration to be given for the purchase of the property, yet they were not necessarily involved in the purchase, nor referred to in the contract, and were in fact incidental and collateral."

Locke v. Murdoch, 20 N. M. 522.

In Zanturjian v. Boornazian, supra, the court held that the parol agreement involved therein, to the effect that defendants would not re-engage in the same business, was not within the statute of frauds, but that proof of the parol agreement contradicted the terms of the writing.

These cases and the quotations therefrom are set out principally for the purpose of showing how the courts have applied the general rule and the exceptions involved in this case under the peculiar facts of each case.

Mr. Wigmore, in his work on Evidence, makes the following commentary on the subject under discussion:

"But in those instances in which a negotiation concerns one general subject—such as the purchase of a single lot of land having buildings on it—and yet several more or less separable features of bargain, the relation between the writing and the whole bargain is usually difficult to ascertain, and forms a perpetually recurring controversy. To say that the question is whether the parties intend to embody 'the whole of the transaction,' or only a part, is therefore hardly correct; because by hypothesis the writing does represent the whole of what was finally done on the subject covered by it, and because to assume that the subject not covered was a 'part' of the transaction covered would be inconsistent, and would involve holding that the writing which embodies the transaction does not embody that 'part' of it.   More correctly, the inquiry is whether the writing was intended to cover a certain subject of negotiation; for, if it was not, then the writing does not embody the transaction on that subject, and one of the circumstances of decision will be whether the one subject is so associated with the others that they are in effect 'parts' of the same transaction, and therefore, if reduced to writing at all, they must be governed by the same writing.

"The intent must be sought where always intent must be sought, * * * namely, in the conduct and language of the parties and the surrounding circumstances. The document alone will not suffice. What it was intended to cover cannot be known until we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. Thus the apparent paradox is committed of receiving proof of certain negotiations in order to determine whether to exclude them; and this doubtless has sometimes seemed to lower the rule to a quibble. But the paradox is apparent only. The explanation is that these alleged negotiations are received only provisionally. Although in form the witnesses may be allowed to recite the facts, yet in truth, the facts will afterwards be treated as immaterial and legally void, if the rule is held applicable. There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence of both sides; his decision here, pro or con, concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that if they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that, if they did, they are legally effective, and he then leaves to the jury the determination of facts whether they did take place. * * *

"In deciding upon this intent, the chief and most satisfactory index for the judge is found in

the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing.

"If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. This test is the one used by the most careful judges, and is in contrast with the looser and incorrect injuiry * * * whether the alleged extrinsic negotiation contradicts the terms of the writing." 4 Wigmore on Evidence, § 2430.

The rule announced by Mr. Wigmore appears to us to be the proper one and the one which we will follow in this case. In the case at bar it will be seen that the contract of September 23, 1910, was in reference to the sale of appellant's practice and certain of his office furniture, and was entirely silent as to the subject-matter contained within the parol agreement which was subsequently put in writing. We therefore are constrained to hold that the general rule contended for by appellant has no application to the facts of this case, and that the court did not err in admitting evidence of the parol agreement made contemporaneous with the execution of the written contract and not varying any of the terms thereof.

[9] Appellant also contends that the agreement to refrain from doing business in Springer was without consideration. We take it that the point is presented on the theory that the parties expressed their entire contract in the agreement of September 23, 1910, and that when the second agreement was executed there was no obligation resting upon appellant to agree not to re-engage in the business or practice the profession in Springer, and therefore the agreement on the part of appellant was voluntary and without consideration. The complaint is rather indefinite on the question of consideration for the execution of the second contract. It alleges that as a further con-

sideration the second agreement was made by parol at the time of the execution of the first agreement. The proof tends to establish that the consideration for the execution of the second agreement was the promise by the appellant at the time of the execution of the first contract, and that that promise was the inducing cause for the execution of the first agreement by appellee. Being such, we cannot say that it was not a "further consideration" for the execution of the first contract, but are constrained to hold that it was a further consideration therefor. The theory of appellant's argument is that at the time of the execution of the second contract the first had been performed and that no valuable consideration moved from one to the other party for the execution of the second contract. The second written contract was executed in pursuance of the former parol agreement by the parties, so that the real question concerning the consideration would be determined by the existing facts at the time of the making the parol agreement, if it were necessary to determine that question under this point. The cases cited by appellant bear out what we have said is his theory in this court, i. e., that the consideration for the second contract is what is termed a "past consideration." Those cases are clearly distinguished from the one at bar. There the alleged parol agreements were apparently afterthoughts, and were not a part of the original transaction either in writing or by parol. Nor do we find any merit in the appellant's contention that to permit appellee to sustain his right of recovery in this court on the theory that the consideration of the second contract was the parol inducing promise heretofore referred to would be to permit him to change the theory of his case.

[5] The appellant also urges that the trial court erred in sustaining the demurrer because it appears upon the face of the complaint that the plaintiff was not entitled to the relief he demanded nor any relief in equity. Appellant argues that the complaint does not show the amount of practice done by each of the parties, nor that the business of appellee was less remunerative by reason

Locke v. Murdoch, 20 N. M. 522.

of the breach of the agreement, but shows a doubt as to the law and the facts sufficient to justify equitable relief. The complaint alleges the making of a contract whereby appellant agreed not to open an office in Springer for five years for the purpose of practicing dentistry, its breach and injury which cannot be measured in money, together with an allegation that a multiplicity of suits will follow in the event equity does not take jurisdiction of the cause, in order to recover losses suffered by appellee by way of damages.

High on Injunction, vol. 2, § 1168, states the theory upon which courts of equity take cognizance of this class of cases:

"The jurisdiction in cases of this nature is based upon the ground that the parties cannot be placed in statu quo, and that damages at law can afford no adequate compensation; the injury being a continuing one and irreparable by the ordinary process of courts of law."

We are of the opinion that, while the complaint might well have been more definite and certain in some respects, it is sufficient to warrant the action of the trial court in entertaining jurisdiction of the cause.

In this connection, the appellant contends that the question is whether the defendant violated his agreement or was doing that which he had a right to do when practicing dentistry in Springer. The complaint clearly alleges that appellant agreed not to open an office in Springer for the purpose of practicing dentistry for five years and a breach thereof. The allegation was established by substantial evidence. The court found that appellant made such an agreement and violated it, and we will not disregard the findings of the trial court in this regard; there being substantial evidence to warrant the finding. While the second contract may have permitted appellant to treat certain patients of appellee when the latter was absent from the town of Springer, it did not permit him to open an office in Springer for the purpose of practicing his profession therein.

Appellant also urges that the provision in the second contract as to appellant treating patients during appellee's absence from Springer could not have been specifically enforced as against the appellant, and therefore the agreement lacked mutuality, and the negative covenant not to practice in Springer for five years cannot, under such circumstances, be enforced by injunction. The consideration for the covenant not to engage in the practice in Springer, or open an office for the purpose of practicing dentistry in Springer, was the inducement for the execution of the first contract. Therefore, whether the provision in the second contract concerning the appellant treating patients of appellee when the latter was absent from Springer could be specifically enforced or not is entirely immaterial in a consideration of the merits of this case, and of the point made by appellant. The covenant not to engage in the practice in Springer, or not to open an office in Springer for the purpose of practicing dentistry, did not lack mutuality. There was no attempt in this case to enforce the covenant concerning appellant treating patients of appellee.

[6] Appellant argues and cites authority that to support an injunction from engaging in business the proof of the contract to do so must be clear and indubitable, and, if the evidence is conflicting, an injunction is properly denied. The rule adopted by this court and followed in a great number of cases is that this court will not disturb the verdict of a jury nor the findings of the trial court whede there is substantial evidence to support the same.

[7] The proof in this case is substantial. Under the same heading it is claimed by appellant that it must be shown that appellee used reasonable diligence in asserting his rights and in demanding their protection, and that the evidence in this case shows that appellee delayed eleven months in asking a court of equity for relief, which constituted inexcusable delay. We assume that the question was presented to the trial court by the demurrer, though we fail to find that the question was raised during the trial of the cause.

It is a general rule of equity that he who seeks the aid of equity must show that he has used reasonable diligence in asserting his rights and demanding their protection, and unreasonable delay in seeking the aid of a court of equity will generally prove a bar to the exercise of the jurisdiction.  2 High on Injunctions, § 1119.  The proposition is primarily addressed to the trial court whose equitable jurisdiction is first invoked.  What constitutes reasonable diligence can be determined by no established rule, for the question must be determined upon the circumstances of each case.  The complaint alleges the making of the contract on September 23, 1910, and putting it into writing on September 23, 1911.  It also alleges that the contractual obligation of appellant was violated on April 23, 1912, when appellant is alleged to have opened an office in Springer for the purpose of practicing dentistry. This action was commenced on March 12, 1913, more than ten months after the alleged breach of the contract.  The evidence also disclosed these facts.  The trial court entertained jurisdiction of the cause knowing that appellee had waited more than ten months before attempting to protect his rights, and we are not prepared to say that such time, under the circumstances of this case, constituted laches on the part of appellee sufficient to deprive him of resort to a court of equity.

[10]  The appellant says that the second contract, if it is a contract within the meaning of the law, "prohibited defendant from opening an office in Springer for the purpose of practicing dentistry in Springer for a period of five years, except it be with the consent of the plaintiff," but did not "prohibit plaintiff from opening an office in Springer for practicing dentistry for persons outside of Springer."  If that be correct, the conclusion we are left to draw is that the evidence does not show that the appellant violated his contractual obligation because it does not appear that appellant treated persons residing in Springer. It must be admitted that appellant was allowed to treat patients of appellee when appellee was absent from Springer, for such are the terms of one of the covenants in the

second contract. But the distinction drawn by appellant's counsel is without any substantial foundation. The contract must be construed as it is written. It prohibits appellant from opening an office in Springer for the purpose of practicing dentistry in Springer, not prohibiting appellant from opening an office in Springer for the purpose of practicing dentistry among people of Springer. The literal interpretation of the words of the contract does not permit of the fine-spun distinction drawn by appellant.

The appellant contends that it is essential that the complaint should state facts showing a necessity for the extraordinary remedy of injunction, and that the complaint in the case at bar fails to show "in what way and for what reason plaintiff will suffer irreparable injury from the alleged violation of the written agreement." The appellant demurred to the complaint, and one of the grounds therefor was that the complaint failed to state facts sufficient to constitute a cause of action, in that it did not show that the plaintiff was entitled to any equitable relief. The demurrer was overruled and defendant pleaded over. The appellee does not raise any question as to the effect of thus pleading over, but contends that the question now urged was not raised in the trial court, and therefore cannot be raised here for the first time. It is unnecessary to decide whether the matter contained within the demurrer is too general to raise the question. The Code (subsection 36, § 2685, C. L. 1897) provides that:

"The demurrer shall distinctly specify the grounds of objection to the pleading; unless it does so, it may be disregarded."

Prior to statehood, it was necessary by Supreme Court rule, to specify the ground of demurrer, as well as the reason therefor; but this particular rule no longer exists as a rule made by the Supreme Court. The appellant attacks the complaint before this court on the ground that equitable jurisdiction is not shown therein because the allegation of irreparable injury is alleged as a conclusion and not as a fact. The complaint alleges that the injury can-

not be measured by a money judgment, and also contains an additional allegation as to multiplicity of suits. We deem it amply sufficient to withstand the attack now made upon its sufficiency in these regards

[8] Appellant insists that the court erred in admitting evidence of certain letters and conversations written and had prior to the making of the first contract, and in admitting secondary proof in reference to the letters.

The introduction of the letters and part of their contents by secondary evidence were directed to support the oral agreement made by the parties with reference to the appellant thereafter opening an office in Springer for the purpose of practicing dentistry in Springer. The appellant argues that such letters and conversations tended to vary the terms of the first written contract. The first letter to which objection was made contained statements of appellant to the effect that he did not intend to practice dentistry in Springer after the sale to appellee was perfected. The letter also contained matters concerning the sale. But the purpose of the introduction of the letter was to support the theory that the oral agreement had been actually entered into by the parties. The second letter to which appellant objects contained matters concerning the sale of the business, as well as matters pertaining to the parol agreement. The contents were proved by secondary evidence. The first objection as to the contents of the letters was that the same was secondary evidence—not that a proper foundation for secondary evidence had not been laid. The court required further proof of facts laying the foundation for secondary evidence, and the witness testified that the letter was left in Missouri, and that the relatives of the witness had searched for it, but had been unable to find it, and that the witness has diligently searched among his papers in New Mexico and has been unable to find it. The appellant then objected to stating the contents of the letter on the ground that such proof was secondary evidence and for other reasons not necessary to state in this particular. The objection can hardly be said to raise the question as to the proper foundation for

the admission of secondary evidence. Appellant's objections to certain conversations related by the witness, occurring at a time prior to the execution of the first contract, are based upon the theory that such conversations altered the terms of the first written contract. The court has held in this opinion that oral testimony tending to prove the parol agreement was not obnoxious to the general rule upon which appellant relies, and this evidence was directed to that end. Other questions discussed in the briefs, but not specifically referred to herein, we deem are without merit.

Appellant says that the evidence is insufficient to support the judgment for damages, and in this he is correct. While the evidence in the case shows inferentially that the appellee was damaged by the fact that the appellant opened a dental office in Springer and did considerable business, the proof fails to show the amount of damage which the appellee suffered. Just how the district court assessed the amount of damages at $250 is difficult to determine from the evidence, there being no showing whatever as to the amount of injury to the appellee.

The judgment in this case will, consequently, have to be modified by eliminating therefrom the judgment for damages, and as so modified the judgment of the lower court will be affirmed, and it is so ordered.

ROBERTS, C. J., and HANNA, J., concur.

---

[No. 1813, July 17, 1915.]
[Rehearing Denied August 25, 1915.]